**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALFRED CHARLES MANN,<br>Plaintiff,<br>v.<br>COMMISSIONER OF SOCIAL SECURITY,<br>Defendant. | No. 2:25-CV-1846-DC-ICD<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff Alfred Charles Mann seeks judicial review of an unfavorable final decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits (DIB) under Title II and Supplemental Security Income (SSI) under Title XVI of the Social Security Act. The matter is currently before the Court on Plaintiff's motion for summary judgment (ECF No. 10), Defendant's cross-motion for summary judgment (ECF No. 14), and Plaintiff's reply (ECF No. 15). For the reasons set forth below, the undersigned recommends that Plaintiff's motion for summary judgment be denied, Defendant's cross-motion for summary judgment be granted, and the final decision of the Commissioner be affirmed.

The Court reviews the Commissioner's decision to ensure it applied proper legal standards and is supported by substantial evidence based on the record as a whole. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). If the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Woods v. Kijakazi*, 32 F.4th 785, 788 (9th Cir. 2022). The Court reviews only the reasons the ALJ gave and may not affirm on a ground the ALJ did not rely on. *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir.

2014). An error is harmless where it is "inconsequential to the ultimate nondisability determination," and the party challenging the decision bears the burden of showing harm. *Molina v. Astrue*, 674 F.3d 1104, 1111, 1115 (9th Cir. 2012) (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1162 (9th Cir. 2008)).

## ]I. THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)–(g) and 416.920(a)–(g). The sequential evaluation proceeds as follows:

- **Step 1:** If the claimant is engaged in substantial gainful activity, the claim is denied.
- **Step 2:** If the claimant lacks a severe impairment, the claim is denied.
- **Step 3:** If the impairment meets or equals a listed impairment, the claim is granted.
- **Step 4:** If the claimant's residual functional capacity (RFC) allows past work, the claim is denied.
- **Step 5:** If the claimant can perform other national economy work, the claim is denied.

*See* 20 C.F.R. §§ 404.1520(a)–(g) and 416.920(a)–(g).

The claimant must prove an inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 423(d)(1)(A). The claimant must provide evidence that the severity of the impairment prevents previous work and any other substantial gainful work in the national economy, considering their age, education, and work experience. See *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

The claimant bears the initial burden of proving a disability. See *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). The claimant establishes a prima facie case by showing an impairment prevents past work. See *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If established, the burden shifts to the Commissioner to show the claimant can perform other work in the national economy. See *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988); *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986).

/ / /

## II. PROCEDURAL HISTORY AND SUMMARY OF THE ALJ'S DECISION

Plaintiff protectively filed his applications on May 2, 2023, alleging a disability onset date of January 1, 2021. CAR 17.[1] The claims were denied initially and upon reconsideration. CAR 59, 66. On February 4, 2025, an administrative hearing was held via telephone before an Administrative Law Judge (ALJ), where Plaintiff and an impartial vocational expert appeared and testified. CAR 32-50.

On March 12, 2025, the ALJ issued an unfavorable decision concluding that Plaintiff was not under a disability within the meaning of the Social Security Act from the alleged onset date through the date of the decision. CAR 17-26. The ALJ applied the statutory five-step sequential evaluation process and made the following specific findings:

1. **Insured Status and Step One (Substantial Gainful Activity):** The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2027. At step one, the ALJ determined that Plaintiff engaged in substantial gainful activity (SGA) from February 22, 2021, to March 31, 2021, as a recruiter for Riverside Payments, Inc. (earning $5,661.50 per month); and from February 1, 2022, to March 30, 2022, as a director of human resources for Actriv Healthcare, Inc. (earning $6,532.50 per month). Because Plaintiff's countable earnings exceeded the monthly SGA thresholds ($1,310 for 2021 and $1,350 for 2022), and because there was no continuous 12-month period without SGA between February 2021 and March 2022, Plaintiff was not disabled during that specific timeframe. CAR 19-20.
2. **Step Two (Severity of Impairments):** The ALJ determined that Plaintiff has severe impairments of lumbar and cervical degenerative disc disease, a history of bilateral hip replacements, and obesity. The ALJ explicitly found that Plaintiff's other physical conditions—hyperlipidemia, hypertension, gastroesophageal reflux disease (GERD), a benign seborrheic keratosis lesion, and a remote tongue laceration—were non-severe. An abnormal November 2024 electrocardiogram (ECG) showing premature ventricular

[1] Citations are to the Certified Administrative Record (CAR) lodged on September 3, 2025, ECF No. 9.

contractions (PVCs), a right bundle branch block, and a prolonged QT interval was also deemed non-severe due to a lack of ongoing treatment or associated complications lasting for a continuous 12-month period. Plaintiff's mental conditions (depression, anxiety, and alcohol abuse) were likewise determined to be non-severe. The ALJ highlighted that Plaintiff's alcohol dependency was in stable remission as of April 18, 2023, under conservative medication therapy. Relying on the persuasive assessment of consultative psychologist Cara Dalbey, Psy.D.—who noted Plaintiff presented as cognitively intact with a perfect 30/30 score on the Mini-Mental State Examination (MMSE)—and the State agency consultants, the ALJ found that Plaintiff has only mild limitations across the four functional criteria. CAR 20-21.

3. **Step Three (Listing of Impairments):** The ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, evaluating and rejecting musculoskeletal Listings 1.15 and 1.18 due to the lack of an assistive device for ambulation. CAR 22.

4. **Residual Functional Capacity (RFC) Assessment:** The ALJ determined that Plaintiff retains the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), except he must completely avoid work at heights and around dangerous machinery, and he is unable to climb ladders, ropes, or scaffolds. The ALJ adjusted for Plaintiff's complaints of spinal pain with the climbing limitation and added the environmental limitations as a precaution to account for his history of alcohol withdrawal-related seizures. CAR 23.

5. **Step Four (Past Relevant Work):** Relying on Plaintiff's work reports, earnings records, and the consistent testimony of the vocational expert, the ALJ concluded that Plaintiff is capable of performing his past relevant work as a human resources manager (DOT 166.117-018, sedentary exertion, SVP 8) both as generally performed and as actually performed. CAR 25.

The Appeals Council denied Plaintiff's request for review on April 29, 2025 (CAR 1-4), making the ALJ's decision the final decision of the Commissioner for judicial review under 42 U.S.C. § 405(g).

## III. LEGAL ISSUES ON APPEAL

Plaintiff argues that the Commissioner's decision should be remanded based on the following three legal theories:

1. **Failure to Conduct the Drug Addiction and Alcoholism (DAA) Materiality Analysis**: Plaintiff contends the ALJ committed a reversible legal error by bypassing the mandatory six-step sequential evaluation under SSR 13-2p and 20 C.F.R. § 404.1535. He argues the ALJ evaluated his mental functioning only after he achieved sobriety in April 2023, ignoring the preceding two years of active alcohol abuse. Additionally, Plaintiff asserts that basic environmental restrictions are wholly inadequate to account for his history of severe withdrawal seizures. ECF No. 10 at 3-5.
2. **Breach of the Independent Duty to Develop the Record**: Plaintiff argues that the medical opinions supporting the physical RFC (rendered in early 2024) are "stale" because they predated a severe cervical spine impairment diagnosed in late 2024. Because diagnostic imaging and a neurosurgeon's recommendation for spinal fusion established a new, serious condition, Plaintiff asserts the ALJ improperly interpreted this raw medical data herself and breached her duty to obtain an updated medical opinion. ECF No. 10 at 5-7.
3. **Improper Omission of Mild Mental Limitations from the RFC**: Plaintiff maintains it was legal error for the ALJ to explicitly find "mild" functional limitations in all four Paragraph B domains at step two but include zero non-exertional restrictions in the final RFC. Plaintiff emphasizes this error is not harmless under SSR 96-8p because he was found capable of returning to his past relevant work as a human resources manager—an occupation classified as highly skilled (SVP 8) with a reasoning level of 5. ECF No. 10 at 7-18.

## IV. DISCUSSION

### A. Failure to Conduct the DAA Materiality Analysis

To qualify for benefits, the plaintiff must have an impairment severe enough to significantly limit the physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). In determining whether a claimant's alleged impairment is sufficiently severe to limit the ability to work, the Commissioner must consider the combined effect of all impairments on the ability to function, without regard to whether each impairment alone would be sufficiently severe. *See Smolen v. Chater*, 80 F.3d 1273, 1289-90 (9th Cir. 1996); *see also* 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. §§ 404.1523 and 416.923. An impairment, or combination of impairments, can only be found to be non-severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. *See* Social Security Ruling (SSR) 85-28; *see also Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988). A physical or mental impairment must be established by objective medical evidence from an acceptable medical source. *See* 20 C.F.R. §§ 404.1521, 416.921.

Plaintiff argues that the ALJ committed reversible error by evaluating his mental conditions only after he achieved sobriety in April 2023, failing to apply the mandatory six-step DAA materiality analysis under SSR 13-2p for the preceding two years of the relevant period. ECF No. 10 at 3–5. The Court does not agree. Under the sequential evaluation process, a DAA materiality analysis is triggered if, and only if, the ALJ first finds that the claimant is disabled after considering all impairments including DAA. 20 C.F.R. § 404.1535(a); *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001). Because the ALJ determined that Plaintiff was not disabled at any point during the relevant period, the materiality analysis under SSR 13-2p was never reached.

Furthermore, substantial evidence supports the ALJ's step-two finding that Plaintiff's alcohol dependence was non-severe. Clinical progress notes from Community Health Care and Family Dynamics Resource Center during the period of usage documented consistently unremarkable mental status findings, including full orientation, normal speech, intact attention, and an appropriate mood and affect (CAR 21). The record also demonstrates that Plaintiff's

condition responded successfully to conservative, medication-assisted therapy (naltrexone and acamprosate), entering stable remission by April 2023 (CAR 21–22). Finally, Plaintiff's high-level work activity as a recruiter in 2021 and an HR director in 2022 constituted substantial gainful activity under the regulations, directly contradicting any allegation that his alcohol dependency caused a continuous 12-month period of listing-level functional disruption prior to his sobriety (CAR 19–20). Any residual safety hazard stemming from historical withdrawal seizures was fully accounted for by the ALJ's environmental restrictions limiting exposure to heights and dangerous machinery in the residual functional capacity formulation (CAR 25). *See Land v. Saul*, No. 1:20-cv-00236-GSA, 2021 WL 1734346, at *12 (E.D. Cal. May 3, 2021) (finding that an ALJ's restrictions against working around unprotected heights and dangerous machinery sufficiently accommodated a claimant's risk of alcohol withdrawal seizures).

**B. Breach of the Independent Duty to Develop the Record**

Plaintiff contends that because the physical medical opinions of record (offered by Dr. Sethi and the State agency medical consultants) were rendered in early 2024, they were "stale" and could not support the RFC. He argues that subsequent late-2024 diagnostic imaging revealing grade I anterolisthesis and a surgical recommendation by neurosurgeon Dr. Lars Widdel triggered a duty to secure an updated medical opinion. ECF No. 10 at 5-7.

The Court does not agree. The record was adequate, and no further development was required. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001); *see also Ludwig v. Astrue*, 681 F.3d 1047, 1055 n.30 (9th Cir. 2012). Here, the ALJ possessed the complete longitudinal medical record, explicitly including all of Dr. Widdel's treatment files and the late-2024 imaging results (CAR 23-24).

Furthermore, the early 2024 opinions provided a robust baseline for the ALJ's evaluation. Consultative examiner Sushil M. Sethi, M.D., evaluated Plaintiff in January 2024, noting a normal gait, normal muscle tone, normal strength, and normal hand manipulation/fine coordination despite mild tenderness in the shoulders and cervical spine, and concluded Plaintiff

could lift and carry 20 to 25 pounds frequently and 30 to 50 pounds occasionally (CAR 24, 433). State agency medical consultants, Mark M., M.D., and E. Garcia, M.D., subsequently reviewed the evidence and reached consistent conclusions, opining that Plaintiff retained the residual functional capacity to perform medium exertional work (CAR 24, 56-57, 73). The ALJ properly found these opinions highly persuasive, as they were well-supported by thorough clinical exams and consistent with the longitudinal records displaying stable post-surgical bilateral hip findings and mild lumbar degeneration (CAR 24-25).

Nor did the ALJ impermissibly interpret raw medical data. The ALJ is "responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). The ALJ specifically noted that while the late-2024 imaging established structural changes in the cervical spine, examinations during the same period showed 5/5 motor strength, normal reflexes, normal peripheral sensation, and a regular level gait (CAR 24). Additionally, Plaintiff reported to his neurosurgeon that his neck symptoms were relatively well-controlled under his current conservative medication regimen (CAR 24). The ALJ appropriately weighed the structural findings against these benign clinical indicators to formulate a medium RFC with additional postural and climbing bans to accommodate Plaintiff's pain and historical withdrawal seizures beyond the baseline medical opinions (CAR 23-25). That the opinions predate later evidence does not by itself make them unreliable. *See Owen v. Saul*, No. 18-35210, 808 F. App'x 421, 423 (9th Cir. Apr. 3, 2020) (unpublished) ("[T]here is always some time lapse between a consultant's report and the ALJ hearing and decision . . . ."). The ALJ's physical RFC is supported by substantial evidence.

Even if the ALJ should have assessed a lower exertional level, any error would be harmless. At step four, the ALJ found that Plaintiff can perform his past work as a human resources manager, which is sedentary. CAR 25. Limiting Plaintiff to light or sedentary work would not change that finding. Plaintiff does not identify a non-exertional limitation arising from his cervical condition, such as a limit on reaching, handling, or sitting, that would preclude his past sedentary work. *See Molina*, 674 F.3d at 1111.

/ / /

**C. Omission of Non-Severe Mild Mental Limitations from the RFC**

Finally, Plaintiff argues that because the ALJ explicitly found "mild" limitations in all four broad functional domains at step two under the psychiatric review technique (PRT), the ALJ committed a reversible legal error by failing to translate those findings into specific mental restrictions within the RFC or provide a narrative explanation for their total omission. ECF No. 10 at 7–18. He emphasizes that this omission cannot be deemed harmless because the step-four non-disability determination rests entirely on his capacity to return to his past relevant work as a human resources manager—a highly complex, skilled position (SVP 8) requiring a reasoning level of 5 under the Dictionary of Occupational Titles. *Id.; see also* CAR 25.

The Court does not agree. In assessing a claimant's RFC, an ALJ must consider limitations imposed by all of a claimant's medically determinable impairments, including those that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). A total failure to evaluate the combined impact of non-severe, mild mental impairments throughout the sequential evaluation process is legal error. *See Hutton v. Astrue*, 491 F. App'x 850, 850–51 (9th Cir. 2012) (remanding where the ALJ explicitly found mild limitations from a non-severe mental impairment at step two but excluded any mention of the impairment from the subsequent RFC analysis). However, a mild paragraph B rating at step two does not mandate the inclusion of specific non-exertional workplace restrictions in the final RFC, provided that the ALJ's decision demonstrates a continuous, reasoned evaluation of the claimant's mental functioning as a whole. *See Woods*, 32 F.4th at 794 (affirming an RFC lacking explicit mental limitations where the ALJ's assessment overall properly reflected the mild step-two paragraph B findings and the tracking longitudinal evidence). The paragraph B criteria are used solely to rate the severity of mental impairments at steps two and three, whereas the RFC assessment requires a more itemized narrative of specific work-related functions. SSR 96-8p, 1996 WL 374184, at *4.

Here, the ALJ's decision is legally distinguishable from the unarticulated omission penalized in *Hutton* and satisfies the analytical thresholds of *Woods*. The ALJ did not permit Plaintiff's mild mental impairments to simply disappear between steps two and four; rather, the

administrative decision sets forth a comprehensive narrative connecting Plaintiff's psychological history to his longitudinal functioning. The ALJ explicitly itemized and adopted the consultative examination findings of Cara Dalbey, Psy.D., who conducted a thorough mental status examination and determined that Plaintiff possessed average intelligence, normal thought content, an error-free serial 7s performance, and a perfect 30/30 score on the Mini-Mental State Examination (CAR 21–22, 426).

The ALJ properly balanced these intact clinical indicators against the primary care treatment records from Community Health Care and Family Dynamics Resource Center, which verified that Plaintiff’s depression and anxiety symptoms were mild, stable on Lexapro, and that his alcohol dependence was in sustained, stable remission under conservative naltrexone and acamprosate therapy (CAR 21–22). Because the ALJ explicitly addressed the underlying clinical findings and explained that the longitudinal records documented normal attention, intact concentration, and an independent capacity to manage daily functions, the ALJ provided the required “detailed assessment” demonstrating that Plaintiff retained the full range of cognitive abilities necessary to satisfy the complex mental and behavioral demands of his past relevant skilled work (CAR 22, 25). The ALJ’s decision to exclude non-exertional cognitive restrictions from the final RFC is supported by substantial evidence and is free of legal error.

## V. RECOMMENDATION

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Plaintiff’s motion for summary judgment (ECF No. 10) be DENIED.

2. Defendant’s cross-motion for summary judgment (ECF No. 14) be GRANTED.

3. The final decision of the Commissioner be AFFIRMED and judgment be entered in favor of Defendant.

///

///

///

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **14 days** after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within **14 days** after service of objections. Failure to file objections within the specified time may waive the right to appeal. *See Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: November 6, 2026

ILA C. DEISS
UNITED STATES MAGISTRATE JUDGE